Stone, J.
Upon a careful examination of the statute we are satisfied the action of the commissioners, in ordering the assessment of the plaintiffs’ lands, was unauthorized.
In the course of the proceedings under the act referred to, the commissioners are required to appoint two committees. The first is to examine and report, among other things, an estimate of the cost of the proposed improvement, and the lots or lands which will be benefited, and ought to be assessed to pay for the same. Such report being made, and the other requirements of the statute being complied with, the commissioners are authorized, if in their opinion public utility requires it, to order the improvement to be made, “which order” the act provides “shall state the kind of improvement to be made, . . . . and the *608 lands which shall be assessed to pay the expense of the-same.”
Such order being made, it thereupon becomes the duty of the commissioners to appoint the second committee-. This committee is required, upon actual view of the premises, to apportion the estimated expense of the improvement “upon the real property embraced in the order aforesaid,” and report the same to the county auditor. The-apportionment is not made according to any fixed rule, but according to the benefit to be derived from the improvement. The execution of the power involves the exercise of judgment and discretion, and being for this reason peculiarly liable to abuse, it is the plain intent of the act to give all parties whose lands are thus sought to be charged a reasonable opportunity to be heard before the adjustment is finally made. To this end, upon the return-of the report of this committee, the county auditor is required to “give notice of it” by publication in some newspaper published and of general circulation in the county,, and in like manner to give notice, for at least three consecutive weeks, of the time when the commissioners will meet at the office of the county auditor to hear the same. If, at the time appointed, exceptions have been filed to the report, the parties interested have an opportunity to be heard. Witnesses may be examined, and, as the result, the report may be confirmed as made, or it may be changed or referred to a new committee of apportionment. In the-latter case the new committee are to make their report as in the case of the former committee, upon actual view of the premises. Upon the return of their report, the same notice is to be given, and the parties in interest are to have-like opportunity to be heard.
The terms “such final order,” as used in section 5 of the act, plainly refer to the order made by the commissioners, as previously provided in the same section, directing the improvement to be made and designating the lands-ordered to be assessed. After that order is made, it may,, in a proper case, be changed by adding thereto other lands *609 but such addition must be made, if at all, before final action is taken by the committee of apportionment; for by the express provisions of section 6, that committee is required, upon actual view of the premises, to apportion the-expense of the improvement upon the lands embraced in the order. The commissioners are also authorized, as we-have seen, to change the report of the committee of apportionment, but whether the same be changed or not,, their action confirming the report is final, and exhausts the jurisdiction of the commissioners with respect to the-assessment. That action is to be entered of record, together with the report as confirmed. The report thus confirmed and recorded is required to show how the estimated expense has been apportioned upon the lands ordered to be assessed, and is the evidence upon which the auditor is to-act in placing the assessment upon the duplicate.
To hold that the commissioners have power, after all this has been done, to bring in additional lands and assess them at their discretion, would violate not only the necessary implications, but some of the express provisions of the act, and defeat the object of some of its most salutary requirements.
A majority of the court are of opinion that the parties,, whose lands were thus illegally assessed, properly joined in the action to obtain the equitable relief prayed for. . The. lands of each were sought to be charged for one and the same purpose, and in the same manner, by the action of public officers proceeding under color of lawful authority. The rights of each depended upon the same question. The asserted authority, if illegal as to one, was illegal, as to all-The case, therefore, in the opinion of a majority of the court, is one of which, under our former practice, a court of chancery had jurisdiction to prevent a multiplicity of suits, and one which may well be sustained under the, at least, equally liberal provisions of the code. Code, sec. 37; Matheney, for himself et al. v. Golden, 5 Ohio St. 361.
While I am not entirely satisfied with this view, which, *610 is concurred in by my brethern, I concur, so far as concerns the present case, in the result to which it leads. Under the statute giving jurisdiction to the courts of common pleas to enjoin the collection of taxes illegally assessed, the original petition unquestionably stated a good cause of action as to each of the plaintiffs. ' The demurrer interposed by the defendants can only be regarded as assigning the statutory cause of demurrer — that the petition did not state facts sufficient to constitute a cause of action. Of the six causes of demurrer allowed by the code, no other was assigned. Whether the plaintiffs properly joined in the action or not, and whatever upon this subject may be the rule in actions for the recovery of money only, the demurrer was, in my judgment, in the present case, properly overruled. The defect reached by the demurrer, if such defect existed, was not waived by a failure to either demur or answer. It was equally fatal at any subsequent stage of the case. A judgment recovered in a ease in which the pleadings disclose no cause of action can not of course be supported. The alleged irregularity here insisted upon does not, in my judgment, constitute a defect of that character. It has relation to convenience in the presentation and trial of the issues, rather than to the ultimate rights of either party. It is at most a misjoinder of several causes of action of the same character, in favor of several parties, all seeking the same equitable relief. Such irregularity does not necessarily operate to the prejudice of the defendant, and is waived if the objection be not taken at the proper time before judgment. Barnes et al. v. City of Beloit, 19 Wis. 93. Motion overruled.